**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LATTIMORE MATERIALS CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:20-CV-03153** |
| | § | |
| **ASQUIP, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM & ORDER**

On September 22, 2021, the Court held a hearing on Plaintiff's Motion for Summary Judgment. It took the motion under advisement. The Court now finds that the Motion for Summary Judgment should be **GRANTED** for the reasons set forth below.

**I.      BACKGROUND**

**A.  Factual Background**

Plaintiff Lattimore Materials Corp. ("Lattimore"), a Texas corporation, is the current tenant under a commercial lease (the "Lease Agreement") covering three commercial sites in the Houston area (the "Property"). The Lease Agreement was originally executed on January 8, 1998, between Defendant Asquip, Inc. ("Asquip"), a Virginia corporation, and Frontier Materials Company ("Frontier"). It was extended through September 30, 2020. At issue in this case is the provision granting the lessee the exclusive option to purchase the Property from Defendant at a certain purchase price ("Purchase Option").

Effective August 1, 2009, Frontier assigned all rights, title, and interest in the Lease Agreement to Lattimore Materials Company, L.P., with Defendant's consent. To this end, Defendant and Frontier executed an Estoppel Certificate specifically providing that the Purchase

Option "is still in full force and effect" and that the assignment did not constitute an event of default.

After this assignment, Lattimore Materials, L.P. underwent two conversions under separate Plans of Conversion—first, to a Lattimore Materials, LLC, then to Lattimore Materials Corp. ("Lattimore" or "Plaintiff"), both as of March 4, 2011. The Texas Secretary of State accepted the Certificates of Conversion. The Lease Agreement contains no provisions addressing a change in control of the lessee, a change in its ownership, or a conversion of its corporate form.

Per the terms of the Purchase Option, on June 4, Plaintiff provided 60 days' written notice to Defendant of its intent to purchase the Property at the calculated price of $2,581,586.00. It stated that it would bear all closing costs and proposed a closing date of September 1, 2020. Among the three parcels covered by the Lease Agreement, Lattimore claims that the Spring Property is especially suited to Lattimore's specific business because of its access to adequate roads and rail, among other reasons.

Defendant refused to consummate the sale of the Property. Plaintiff has since continued to pay rent to Defendant. Further, annual, volume-based "additional rent" payments on both concrete and rock exported through the rail are due in November 2021.

### B.  Procedural History

Plaintiff brings an anticipatory breach of contract claim. It seeks specific performance of the Purchase Option, a declaratory judgment that it is entitled to purchase the Property pursuant to the Purchase Option, and attorneys' fees.  Plaintiff filed this Motion for Summary Judgment on May 28, 2021. This was the first (and only) dispositive motion filed by either party. The parties completed discovery this month.

### II.    MOTION FOR SUMMARY JUDGMENT

**A.  Legal Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson*, 477 U.S. at 248).

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Although summary judgment may be based on affidavits, conflicts of credibility should not be resolved on a hearing on a motion for summary judgment; questions of credibility require jury resolution. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 (5th Cir. 1980). *See also Service & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987) (holding that district court deciding a motion for summary judgment could not find that the former employer's documentary evidence was

inherently more reliable or accurate than an employee and co-worker's testimony and sworn statements from memory).

### B. Discussion

Lattimore filed this Motion for Summary Judgment amid discovery, arguing that Defendant breached the Lease Agreement by refusing to honor the Purchase Option. Plaintiff further argued that it was not in default under the Lease Agreement, as Defendant alleged in response to discovery requests. In its Response, Defendant countered that summary judgment should be denied because the following (purportedly undisputed) material facts remained in dispute at the time of filing:

- That there was no transfer of all or substantially all of Lattimore Materials, L.P.'s assets via the conversions;

- That Lattimore was not in default of terms and conditions of the Lease Agreement as of June 4 (when Lattimore attempted to exercise the Purchase Option);

- That Lattimore had continuously maintained insurance for the Property as of June 4; and

- That Lattimore has satisfied all conditions precedent necessary to exercise the Purchase Option.

The Court addresses these points below.

### 1. Whether the Two Conversions Constituted Transfers of Assets

The parties agree that Lattimore underwent two conversions and had a change in ownership during the pendency of the Lease. But they disagree as to whether the two conversions constituted transfers of assets, which would put Lattimore in default of the Lease and render it unable to exercise the Purchase Option. Paragraph 19 of the Lease Agreement, in relevant part, provides that the following event will be deemed a default: "(b) Tenant shall

become insolvent or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors or shall transfer all or substantially all of its assets to another person or entity."

The parties agree that the conversions took place under Tex. Bus. Org. Ann. Code Sec. 10.106. It provides that "the converting entity continues to exist without interruption in the organizational form of the converted entity," and that "all rights, title, and interests to all property owned by the converting entity continues to be owned . . . by the converted entity in the new organizational form without . . . (A) reversion or impairment; (B) further act or deed; or (C) *any transfer or assignment having occurred*." Tex. Bus. Org. Ann. Code Sec. 10.106 (emphasis added). Plaintiff asserts that the statutory language dispositively establishes, as a matter of law, that no transfer of assets occurred.[1] *See, e.g.*, *M.D. Mark, Inc. v. Nuevo Energy Co.*, 988 S.W.2d 463 (Tex.App – Houston [1st Dist.] 1999) (holding that the merger of an oil and gas exploration subsidiary into its parent company and the later merger of the parent company into another energy company did not result in any sale or transfer of licensed seismic data to third parties, as prohibited by a licensing agreement); *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 645-46 (Tex. 1996) (holding that the sale of all of a company's stock to an unrelated third party did not constitute a transfer of assets); *Grohman v. Kahlig*, 318 S.W.3d 882, 887-88 (Tex. 2010) (holding as a matter of law that the conversion of two corporations, whose stock was pledged as collateral to secure a note, into two limited partnerships, did not violate a security agreement prohibiting the transfer of any collateral or any interest in the collateral).

On the other hand, Defendant argues that the state statute does not "operate as [a] blanket

---

[1] Plaintiff also asserts that there was no assignment of interests, which would also have constituted a default under the Lease Agreement. However, because Defendant does not dispute this issue in its Response, the Court need not address it here.

legal conclusion." Def.'s Response, Doc. 32, at 5. Various rules and court decisions, it states, support a holding that such conversions are transfers. *See, e.g., Porter v. Summitbridge Nat'l Invs. III LLC*, No. 05-19-01052-CV, 2020 WL 4815049 (Tex. App.—Dallas Aug. 19, 2020, no pet.) (upholding trial court's finding that the conversion of an entity could constitute a fraudulent transfer); *VRV Dev., L.P. v. Mid-Continent Cas. Co.*, No. CIV.A. 3:09-CV-1382, 2010 WL 375499 (N.D. Tex. Feb. 3, 2010), aff'd, 630 F.3d 451 (5th Cir. 2011) (finding that an insurance company had not agreed to accept the risk of a changed insured because the insurer was not notified of the plaintiff's conversion and "never had the opportunity to evaluate . . . the general partner" of the converted entity).[2] As to *VRV*, Defendant argues that Plaintiff has similarly denied it the opportunity to evaluate the new, sole shareholder of Lattimore after the shareholder bought out the other shares. Plaintiff, however, seeks to distinguish *VRV* from the case at hand: while the insurance policy in that case expressly stated that no person or entity is an insured unless specifically listed, the Lease Agreement here contains no such express restrictions or requirements.

The parties further disagree as to whose side is favored by the lack of any explicit provision in the Lease Agreement on conversions. Plaintiff argues that the Court cannot add to the agreement a provision prohibiting conversion or requiring Defendant's consent for a conversion. In contrast, Defendant claims that, because the Lease Agreement does not address conversions, the Court cannot permit Lattimore to assume the benefits of the Lease without giving Asquip the opportunity to evaluate and accept the change.[3]

---

[2] *But see VRV Devel. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455-56 (5th Cir. 2011) (noting on appeal that the court needed not address the question whether VRV, L.P. acquired VRV, Inc.'s rights to defendant and indemnity by conversion because a covered event was not alleged).

[3] Plaintiff notes that the parties have proceeded under the Lease Agreement since the conversions without issue, and that "Defendant was indisputably aware of the corporate changes by virtue of electronic communications between the parties."

Plaintiff has the stronger legal arguments. The cases Defendant cites are distinguishable because they concern taxes and fraudulent transfers. *See*, *e.g.*, *Tenneco*, 925 S.W.2d at 645 (Tex. 1996) ("[T]he [defendants] incorrectly argue that the election to treat the Second Transfer as an asset sale for tax purposes shows that it may not have been a stock sale. State law, not the Internal Revenue Code, controls the transaction's characterization. How the parties portray their transaction for federal tax purposes is immaterial."). The language of the statute under which the conversions occurred plainly provides that conversions under the statute do not constitute transfers of assets. Moreover, the lack of a provision in the Lease Agreement on conversions more reasonably favors Plaintiff, who is under no obligation to seek Defendant's approval to undergo a conversion under state law. Because there is no dispute that the conversions took place under Tex. Bus. Org. Ann. Code Sec. 10.106, and the Court concludes as a matter of law that the conversions were not asset transfers, there is no genuine issue of material fact that Lattimore did not commit default by converting.

### 2. *Whether the Other Alleged Breaches of the Lease Agreement Constituted Default*

Aside from the two conversions, Defendant alleges additional failures to perform by Lattimore: (1) failure to maintain and prove insurance, (2) removal of Defendant's property without approval, and (3) failure to provide financial statements. Among these, however, Defendant only addresses the insurance allegation in its Response. In any case, the Court need not—and should not at this stage—weigh the credibility of the parties' evidence as to these points.

Instead, the Court focuses here on the threshold legal issue at the core of the parties' dispute: whether Asquip needed to provide written notice before any of these alleged failures to

perform could be deemed defaults under the Lease Agreement. The language of the contract is key to this analysis. Paragraph 19 of the Lease Agreement, concerning events of default, provides:

> *19. EVENTS OF DEFAULT: The following events shall be deemed to be events of default by Tenant under this Lease:*
> *(A) Tenant shall fail to pay when due, any installment of Rent, Additional Lease Payments, additional rent, Operating Expense, Real Estate Tax, Administrative Fee or any other payment or reimbursement to Landlord required herein when due and such failure shall continue for a period often (10) days from the date such payment was due, with a ten (10) cure period as provided by paragraph 19(I);*
> *. . .*
> *(F) Tenant shall fail to maintain any insurance required hereunder;*
> *. . .*
> *(H) Tenant shall fail to comply with any term, provision or covenant of this Lease Agreement and shall not cure such failure within twenty (20) days after written notice thereof to Tenant; or*
> *(I) If the Tenant fails to perform any of the things required of the Tenant under this Lease Agreement and such default is not cured within twenty (20) days after written notice of such default is given by Landlord to the Tenant, the Landlord shall have the right to pursue any remedy set out in this Lease Agreement. If the default cannot be reasonably cured within twenty (20) days and the Tenant is making a good faith effort to cure the default, it shall be extended a reasonable time to complete the curing of any default. Monetary defaults are not entitled to more than a ten (10) day cure period and no good faith effort extension. In addition, Tenant shall only be entitled to two (2) default notices for similar type of default and cure period per year, with a second default, whether the same default or another default, not permitted a cure period.*

Pl.'s Motion for Summary Judgment, Doc. 24, Ex. A, Ex. 1 thereto, ¶ 19. As to 19(F), the Lease Agreement further provides:

> *Tenant's failure to maintain insurance as contemplated by Paragraphs 11 and 11.A of the Lease Agreement shall be deemed a default of this Lease Agreement, except that cure under paragraph 19(1) applies.*

*Id.* ¶ 11(D). Unlike the insurance issue, neither of the remaining alleged failures to perform—removal of property without permission and failure to provide annual financial statements—is specifically listed as an event of (automatic) default under the Lease Agreement.

The parties' readings of this contractual language differ. Plaintiff argues that, even if it

were true that Lattimore had failed to perform in the ways Asquip alleges, Asquip would have had to provide Lattimore written notice and 20 days to cure before Lattimore could be deemed to be in default. On the other hand, Defendant, focusing on 19(I), counters that "the state of being 'in default' relates only to whether Lattimore is complying with the terms of conditions of the lease." Def.'s Response, Doc. 32, at 9. Thus, Defendant asserts, "written notice is required only if Asquip wishes to exercise a contractual remedy," *id.*—not when the lessee seeks to exercise its Purchase Option, for which not being in default is a condition precedent.

Defendant's reading is implausible. First, its analysis discounts 19(H), which the contract separates out from other, delineated events of default. Even if 19(I) were relevant only to remedies, 19(H) still explicitly requires written notice and a 20-day cure period for non-delineated potential defaults. Moreover, Defendant's interpretation would seem to render irrelevant the exception provided in 19(A) and 11(D) for "cure under paragraph 19(1)" before the relevant violations could be considered events of default.

The Court concludes that Defendant needed to provide Plaintiff written notice and a 20-day cure period before any of the alleged failures to perform could be deemed defaults preventing Plaintiff from exercising the Purchase Option. Because the parties agree that Defendant never gave Plaintiff written notice, there is no genuine issue of material fact that Lattimore was not in default and had satisfied all conditions precedent to exercise the option.

Based on the above, the Court **GRANTS** summary judgment to Plaintiff.

## III.    Specific Performance, Declaratory Judgment, and Attorneys' Fees

Plaintiff seeks (1) specific performance of the Purchase Option, given the presumption that the Property is unique; (2) declaratory judgment that it is entitled to purchase the Property under the Lease Agreement; and (3) reasonable attorneys' fees. Defendant asserts that none of

these remedies should be granted because summary judgment should be denied, but generally fails to provide substantive objections to the requested remedies. Because the Court grants summary judgment to Plaintiff, Defendant's argument is unavailing.

Therefore, the Court **GRANTS**, in favor of Plaintiff:

- Specific performance of the Purchase Option;

- A declaratory judgment that Plaintiff is entitled to purchase the Property under the Lease Agreement; and

- Reasonable attorneys' fees whose amount, reasonableness, and necessity will be decided by a separate motion.

*     *     *

For the foregoing reasons, the Motion for Summary Judgment—including Plaintiff's requests for specific performance, declaratory judgment, and reasonable attorneys' fees—is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on September 23, 2021.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE